# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ANTONIO ELPIDIO GOMEZ-ALCINA,

     Petitioner,

v.                                     Case No. 2:26-cv-01542-KG-LF

WARDEN, Otero County Processing Center;
MARKWAYNE MULLIN, Secretary of the
Department of Homeland Security;
TODD BLANCHE, Acting Attorney General
of the United States,
TODD M. LYONS, Acting Director of U.S.
Immigration and Customs Enforcement; and
MARISA FLORES, Acting Director, El Paso
U.S. Immigration and Customs Enforcement,

     Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter comes before the Court on petitioner Antonio Elpidio Gomez-Alcina's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Doc. 1. Chief United States District Judge Kenneth Gonzales referred this case to me "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." Doc. 10. Having reviewed the parties' filings and the applicable law, I recommend that the Court grant Mr. Gomez-Alcina's petition for the reasons discussed below.

## BACKGROUND

Mr. Gomez-Alcina was paroled into the United States from Cuba in 1980 during the Mariel boatlift. Doc. 1-3 at 2; Doc. 1 at 8. In 1985, he was convicted of attempted second degree murder and was sentenced to three years in prison. Doc. 1 at 8. After that period of incarceration,

Mr. Gomez-Alcina was ordered excluded from the United States. Doc. 1-4. His appeal before the Bureau of Immigration Appeals ("BIA") was dismissed on September 23, 1988. *Id.* However, the Cuban government has denied repatriation for Mr. Gomez-Alcina. Doc. 9-1 at 2; Doc. 1 at 9. Accordingly, Mr. Gomez-Alcina has remained in the United States. Doc. 1 at 9. He states that he has complied with all reporting conditions imposed during his time in the United States. *Id.* at 9–10; *see* Doc. 1-6 (conditions); Doc. 1-7 (additional conditions). At a routine Immigration and Customs Enforcement ("ICE") check-in on December 5, 2025, he was taken into respondents' custody, and he has remained there since. Doc. 1-3 at 2; Doc. 1 at 10.

Because Mr. Gomez-Alcina cannot be returned to Cuba, respondents seek to remove him to Mexico. As of May 29, 2026, "Petitioner is currently pending an available seat allocation for a removal mission to Mexico." Doc. 9-1 at 2. No date of removal has been identified in the pleadings or attachments. An ICE Deportation Officer, Joshua Keith, states in his declaration that ICE "is currently attempting to remove Petitioner to Mexico according to the agreement with the Government of Mexico," but he does not specify what this agreement is, nor is it attached to any of the filings in this case. *Id.* Mr. Keith also states that ICE "has been actively working on removal of Petitioner to a third country other than Mexico but there are no updates currently." *Id.*

## LEGAL STANDARD

Section 1231 of title 8 of the United States Code requires the Attorney General to detain noncitizens for ninety days from the date their order of removal order becomes administratively final.[1] 8 U.S.C. § 1231(a)(1)(A)–(B). Once this ninety-day removal period expires, the

---

[1] The Supreme Court has clarified that a removal order becomes administratively final for purposes of detention "once the [Board of Immigration Appeals (BIA)] has reviewed the order (or the time for seeking the BIA's review has expired)." *Johnson v. Guzman Chavez*, 594 U.S. 523, 534–35 (2021). In this case, Mr. Gomez-Alcina's order of removal became administratively final on September 23, 1988. Doc. 1-4 at 1.

government may continue to detain a noncitizen, but not indefinitely. *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001). Continued detention for six months is presumed reasonable. *Id.* at 701. After continued detention for six months, a noncitizen may "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," and the government "must respond with evidence sufficient to rebut that showing." *Id.* "Courts in this district have repeatedly held that detention exceeding six months, combined with failed removal efforts and the absence of any accepting country, constitutes 'good reason' to believe removal is not reasonably foreseeable." *Horbenko v. Castro*, No. 2:25-cv-00764 WJ-DLM, 2026 WL 381867, at *4–*5 (D.N.M. Feb. 11, 2026) (collecting cases).

## DISCUSSION

Mr. Gomez-Alcina argues that his continued detention, in the absence of any likelihood of removal and under the current circumstances, exceeds the authority granted by 8 U.S.C. § 1231(a)(6) and *Zadvydas*, and that it violates the Due Process Clause. Doc. 1 at 15. Further, he argues that exhaustion of administrative remedies is unnecessary under these circumstances because his continued detention constitutes irreparable harm. *Id.* Separate from his constitutional claims, he argues that the respondents have violated 8 C.F.R. § 241.13 and 8 U.S.C. § 1231(a)(6): he was released from ICE custody in 2013 under an Order of Supervision, reflecting a governmental determination that he was not significantly likely to be removed in the reasonably foreseeable future, and ICE re-detained him without legal justification because his removal has not become reasonably foreseeable and he has not violated the conditions of his release. Doc. 1 at 22.

3

## I.        Exhaustion of Administrative Remedies

Respondents argue that Mr. Gomez-Alcina should not be granted habeas relief without first being required to exhaust his administrative remedies by submitting a written petition for relief to "Headquarters"—presumably the Headquarters Post-order Detention Unit described in 8 C.F.R. § 241.13. Doc. 9 at 7–8. Mr. Gomez-Alcina argues that administrative exhaustion is not required because he "may suffer irreparable harm" pursuant to *McCarthy v. Madigan*, 503 U.S. 140, 147 (1992). Doc. 1 at 15.

Habeas petitioners ordinarily are required to exhaust administrative remedies before seeking a writ under § 2241, but exhaustion is not a statutory requirement. *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010); *Soberanes v. Comfort*, 388 F.3d 1305, 1310–11 (10th Cir. 2004). Rather, "[c]hallenges to immigration detention are properly brought directly through habeas," and administrative exhaustion deficiencies "do not affect habeas jurisdiction over such claims." *Soberanes*, 388 F.3d at 1310.

Where exhaustion is not statutorily required, "sound judicial discretion governs." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992), *superseded by statute on other grounds as stated in Woodford v. Ngo*, 548 U.S. 81, 84–85 (2006). Prudential factors favor exhaustion when "(1) the action under review involves exercise of the agency's discretionary power, and (2) the agency procedure at issue allows for "the agency to apply its special expertise." *Lorenzo v. Bondi*, No. 2:25-cv-00923 KWR-GJF, 2026 WL 84521, at *3 (D.N.M. Jan. 12, 2026) (quoting *McCarthy*, 503 U.S. at 145). However, an individual's interests weigh heavily against requiring exhaustion "(1) when the administrative remedy may occasion undue prejudice to subsequent assertion of a court action; (2) when there is doubt that the agency is empowered to grant

4

effective relief; and (3) when an administrative body is shown to be biased" or to have predetermined the issue. *Id.* (internal quotations omitted).

Judges in this district have found that these prudential factors are not applicable to adjudicating *Zadvydas* claims like Petitioner's. *See, e.g.*, *id.* As to the factors that favor exhaustion, the *Lorenzo* Court found that determining the likelihood of future removal does not call for specific agency expertise, and that due process concerns restrict an agency's discretion to detain and remove a noncitizen when the noncitizen is detained beyond the presumptively reasonable period. *Id.* The Court further found the factors weighing against exhaustion inapplicable where the petitioner did not argue that his administrative remedies would impose undue prejudice on a later court action or that the agency had shown bias or had predetermined the outcome. *Id.* at *3–*4. Here, Mr. Gomez-Alcina likewise makes neither argument, nor has he argued that the agency does not have the power to grant effective relief. *See* Doc. 1 at 15.

In *Lorenzo,* the Court found that a petitioner's interest in prompt access to a federal judicial forum outweighs the institutional interests favoring exhaustion. 2026 WL 84521, at *4. Like the petitioner in *Lorenzo*, Mr. Gomez-Alcina "has been detained for over six months, and the presumptively reasonable period of detainment has expired." *Id.* (citations omitted). Accordingly, the Court should not "find that the existence of an unspecified impact on an administrative scheme outweighs the clear impact upon Petitioner's due process rights warranting prompt access to a federal judicial forum." *Id.*

In sum, administrative exhaustion is prudential, *id.* at *3, and challenges to immigration detention "are properly brought directly through habeas," *Soberanes*, 388 F.3d at 1310. Because Mr. Gomez-Alcina's interest in prompt access to a federal judicial forum outweighs the

institutional interests favoring administrative exhaustion, I recommend that the Court decline to require him to exhaust his administrative remedies.

## II.     *Zadvydas* Claim (Count I)

Mr. Gomez-Alcina has been detained from December 5, 2025, to the present—a period of over seven months, which exceeds the six-month presumptively reasonable period in *Zadvydas*. He argues that "the government has been unable to effectuate his removal to Cuba for decades, has not identified any country willing to accept him, and has not obtained travel documents," all pointing to the conclusion that there is no significant likelihood of removal in the reasonably foreseeable future. Doc. 1 at 20–21. These allegations suffice to meet his initial burden. *See Lorenzo*, 2026 WL 84521, at *5; *see also Elshourbagy v. Bondi*, 817 F. Supp. 3d 1102, 1109 (W.D. Wa. 2025) (collecting cases for the proposition that a petitioner has met his initial burden under *Zadvydas* when he cannot be removed to his home country, he does not have citizenship or significant ties to any other country, and there is no evidence that any other country is willing to accept petitioner's removal).

In rebuttal, respondents argue that they have identified a third country willing to accept Mr. Gomez-Alcina, Mexico, and that his removal is likely in the near future pursuant to the declaration of Deportation Officer Joshua Keith. Doc. 9 at 14 (citing Doc. 9-1). In his declaration, Mr. Keith makes the following statements: "ERO [Enforcement and Removal Operations, a division of ICE] continues to work on removing Petitioner to Mexico or Cuba" and "ERO has taken concrete steps to effectuate Petitioner's removal from the United States." Doc. 9-1 at 1. These steps include that after Mr. Gomez-Alcina was denied repatriation into Cuba, "ERO Miami began third country removal efforts to Mexico," that "Petitioner was transferred to the Otero County Processing Center in Chaparral, New Mexico to effect removal to Mexico,"

6

that "Petitioner was served Third Country Removal notice, which he refused to sign," and that "ERO requested allocation for next available removal mission to Mexico, which a tentative removal date is still pending." *Id.* at 2. He states again that "ERO is currently attempting to remove Petitioner to Mexico according to the agreement with the Government of Mexico," but he does not explain what this agreement is, nor is it attached to his declaration or anywhere else on the docket. Mr. Keith's declaration is unclear as to the scope of this agreement (i.e., whether Mexico will accept certain non-Mexican deportees under circumstances to be discussed case-by-case, or whether Mexico has agreed to accept Mr. Gomez-Alcina specifically). He states that a "tentative removal date is still pending," which I understand to mean that that not even a *tentative* removal date has been provided. Indeed, it is unclear whether the government of Mexico specifically has agreed to accept Mr. Gomez-Alcina, let alone when Mr. Gomez-Alcina will be permitted to enter Mexico.

Simply identifying a country where the respondents hope to send Mr. Gomez-Alcina, without providing any specifics about whether the country has accepted him or when his flight is to take place, is insufficient. *See Lorenzo*, 2026 WL 84521, at *5 (government identified Mexico as a site of removal but did not demonstrate that Mexico would accept the petitioner); *see also Nfumu v. Grant*, No. CIV-25-1574-J, 2026 WL 865743, at *5 (W.D. Okla. Feb. 26, 2026) (declaration lacked specifics regarding request to third country, response by third country, and timeline for travel documents and therefore did not show that petitioner's removal was reasonably foreseeable).

The likelihood of removal in the foreseeable future is made lower still by Mr. Gomez-Alcina's lack of ties to Mexico. "The Government's decision to seek third-country removal without any evidence in the record that a petitioner has a legally meaningful connection to the

relevant third countries under 8 U.S.C. § 1231(b)(2)(E)(i–iii) also weighs in Petitioner's favor." *Nfumu*, 2026 WL 865743, at *4 (referencing statutory provision permitting third country deportation). Because Mr. Gomez-Alcina does not consent to removal to Mexico, it is reasonable to assume that litigation on third country removal would delay matters further. *See Aguilar v. Noem*, No. 25-cv-03463-NYW, 2025 WL 3514282, at *4 (D. Colo. Dec. 8, 2025) ("And even if ICE were to identify a country that would accept Petitioner, any efforts to remove him to a third country would likely be delayed by proceedings contesting his removal to the third country finally identified." (internal quotation marks and brackets omitted)).

Previous delays further suggest that Mr. Gomez-Alcina's removal will not be a simple matter. His removal order became final in 1988. Doc. 1-4. The fact that the respondents have not effectuated removal for Mr. Gomez-Alcina in the nearly four decades that followed "weighs against likely removal in the reasonably foreseeable future." *S.F. v. Bostock*, No. 3:25-cv-01084-MTK, 2025 WL 2841022, at *4 (D. Ore. Oct. 7, 2025).

For all of these reasons, I recommend that the Court grant Mr. Gomez-Alcina's habeas petition as to Count I.

### III.    Statutory and Regulatory Claims (Count II)

If the Court grants Petitioner relief on his *Zadvydas* claim, "granting further relief under Petitioner's remaining claims would be cumulative." *Lorenzo*, 2026 WL 84521, at *6; *see also Intriago-Sedgwick v. Noem*, No. 1:25-cv-01065-MIS-LF, 2025 WL 3688155, at *8 (D.N.M. Dec. 19, 2025) (collecting cases), *report and recommendation adopted*, No. 1:25-cv-01065-MIS-LF, Doc. 27 (D.N.M. Jan. 6, 2026). Because I recommend granting Mr. Gomez-Alcina's *Zadvydas* claim, I recommend that the Court decline to reach his statutory and regulatory claims as enumerated in Count II of his petition.

### IV.    Equal Access to Justice Act ("EAJA")

Mr. Gomez-Alcina asks the Court to award him costs and reasonable attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"). Doc. 1 at 25. The Tenth Circuit has "read the EAJA's broad language to unambiguously authorize fees in habeas actions challenging immigration detention." *Daley v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025).

A fee award is required under the EAJA if "(1) plaintiff is a 'prevailing party'; (2) the position of the United States was not 'substantially justified'; and (3) there are no special circumstances that make an award of fees unjust." *Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007) (quoting 28 U.S.C. § 2412(d)(1)(A)). The EAJA requires a prevailing plaintiff to, "within thirty days of final judgment in the action, submit to the court an application for fees and other expenses" that includes an allegation "that the position of the United States was not substantially justified." 28 U.S.C. § 2412(d)(1)(B). The Tenth Circuit has stated that "once an EAJA application is filed, the government is on notice . . . that it must justify both its position in any underlying administrative proceedings and its position in any subsequent district court litigation." *Hackett*, 475 F.3d at 1170.

Should the Court grant Mr. Gomez-Alcina relief, he may file an EAJA application alleging that the government's position was not substantially justified. *See id.* Once that application is filed, the government will have the opportunity to demonstrate that its position in both the underlying immigration case and in this Court was substantially justified. *See id.*

### CONCLUSION

For the reasons discussed above, I recommend that the Court GRANT Mr. Gomez-Alcina's petition as to Count I, his *Zadvydas* argument. I recommend that the Court not reach his

statutory and regulatory claims as enumerated in Count II of his petition. I recommend that the Court DENY AS MOOT his motion for a temporary restraining order (Doc. 6-1).

I recommend that the Court order that Mr. Gomez-Alcina be released no later than 5:00 p.m. the day following the date of the Court's order under the same terms of supervision that were in place at the time of his arrest on December 5, 2025. I further recommend that the Court order respondents to immediately return Mr. Gomez-Alcina's personal property to him upon his release, if they have any property of his, and that the Court prohibit respondents from transferring Mr. Gomez-Alcina outside of the District of New Mexico without the Court's approval before his release from custody. I also recommend that the Court prohibit respondents from re-detaining Mr. Gomez-Alcina without following the formal processes of 8 C.F.R. § 241.4(*l*). Finally, I recommend that the Court order respondents to file a status report within two business days of the Court's final order, certifying the time and date of Mr. Gomez-Alcina's release and that his personal property was returned to him.

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific.** *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, **73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of** *de novo* **review by a district or appellate court.** *Id.* **In other words, if no objections are filed, no appellate review will be allowed.**

_____
LAURA FASHING
UNITED STATES MAGISTRATE JUDGE